UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

STEFAN NICOLAIE LIUBA,

    Plaintiff,

    v.

MASSO EXPO CORPORATION,
et al.,

    Defendants.

Civil No. 98-2100 (JAF)

---

**OPINION AND ORDER**

Initially, the Plaintiff, Stefan Nicolaie Liuba, brought a diversity tort action against the Defendants, Massó Expo Corporation ("Massó") and Seguros Triple S, Inc. ("Triple S"), pursuant to 28 U.S.C. § 1332. The Plaintiff is a resident of New Jersey; the Defendants are Puerto Rican corporations conducting business exclusively in Puerto Rico; and the amount in controversy exceeds $75,000, exclusive of costs and interest.

On August 4, 1999, the Defendants filed a Motion to Inform the Court of Serious Irregularities During the Discovery Process ("the Motion") and two sworn affidavits. The Defendants also moved for us to take judicial notice of the allegations asserted in the Motion and supporting documentation, as well as for us to take appropriate action in the pre-trial proceedings. On August 25, 1999, we held a closed hearing on the Motion.

AO 72
(Rev 8/82)

Civil No. 98-2100 (JAF)                                                    2-

## I.

## Relevant Factual Background

With the Plaintiff's consent, the Defendants arranged for Dr. Juan J. Lojo, Chairman of the Surgical Department of the School of Medicine of the University of Puerto Rico, to examine the Plaintiff for the purpose of evaluating the Plaintiff's allegations of injury. On July 15, 1999, the Plaintiff arrived at Dr. Lojo's offices for the scheduled appointment. After Dr. Lojo had finished with his regular patients, Mrs. Adriana Jiménez, Dr. Lojo's secretary, escorted the Plaintiff into the examining room.

Dr. Lojo conducted a complete physical examination of the Plaintiff. While Dr. Lojo was recording his findings, the Plaintiff produced a stuffed envelope for Dr. Lojo. The Doctor took the envelope because he believed it contained laboratory results or other medically pertinent documents. Upon inspection, he discovered that the envelope contained a large sum of twenty U.S. dollar bills. He immediately closed the envelope and returned it to the Plaintiff, informing him that he could not accept it. Dr. Lojo, quite distressed by what he understood to be an attempted bribe, then accompanied the Plaintiff from the examining room into the hallway and towards the reception area.

As the Doctor and the Plaintiff left the examining room, Mrs. Jiménez walked toward them to collect the medical records. The Plaintiff then proceeded into the reception area while Dr. Lojo and

Civil No. 98-2100 (JAF)                                              3-

Mrs. Jiménez remained in the hallway.  There, Dr. Lojo informed her of

what had just transpired in his examining room and instructed

Mrs. Jiménez not to accept anything from the Plaintiff.  Mrs. Jiménez

walked back to her desk and found the Plaintiff attempting to leave an

envelope on her desk.  Mrs. Jiménez rejected the envelope and informed

the Plaintiff that arrangements for payments had been made with the

Defendants' attorneys.  The Plaintiff then left the Doctor's offices.

    At no time before or during his visit to Dr. Lojo's offices did

the Plaintiff receive a request for payment or invoice of any kind for

the medical examination that Dr. Lojo conducted.

**II.**

**Discussion**

    A federal court has the authority and duty to promote the fair

and efficient administration of justice by, *inter alia*, monitoring the

conduct of all the litigants and attorneys that come before it. <u>See</u>

<u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 44 (1991); <u>Derzack v. County of</u>

<u>Allegheny, Pa.</u>, 173 F.R.D. 400, (W.D.Pa. 1996) ("The court's

obligation is to protect not only litigants who may suffer from

abusive litigation practices of their adversaries, but also to promote

the proper function of a fair and effective judicial system which,

while it is adversarial, need not also be callous, uncivil, sneaky or

booby-trapped.  When it becomes so, the courts must act decisively.").

Various statutory, procedural, and other rules provide the sources for

Civil No. 98-2100 (JAF)                                                   4-

this authority and obligation, including 18 U.S.C. §§ 401, 402; 28 U.S.C. § 1927; and Fed. R. Civ. P. 11(c), 37(b), 41(b), and 55.

In addition, federal courts have inherent powers that not only bridge the interstices between statutory or procedural authorizations, but also, where appropriate, furnish an independent, supplemental source of judicial power. See Chambers, 501 U.S. at 50. Among its implied powers, a federal court may impose silence, respect, and decorum and require parties to submit to rules of fair play so as to "'achieve the orderly and expeditious disposition of cases.'" Id. at 43, quoting Anderson v. Dunn, 6 Wheat. 204, 227 (1821), and Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962).  Upon a finding of bad faith or willful misconduct, a federal court may also impose attorneys' fees and dismiss a case "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976); see also John's Insulation, Inc. v. L. Addison and Associates, Inc., 156 F.3d 101, 108-09 (1st Cir. 1998); c.f. U.S. v. Kouri-Perez, 8 F.Supp.2d 133 (D.P.R. 1998) (reprimanding and ordering fine against defense counsel for their misconduct), appeal dismissed, 1999 WL 536657 (1st Cir. May 7, 1999).

The Plaintiff in this case is a knowledgeable man with a lifetime of experience, undoubtedly including the process for paying bills. At the time Dr. Lojo examined him, the Plaintiff knew or should have

Civil No. 98-2100 (JAF)                                                    5-

known that medical bills, and almost any other type of bill, were
generally not paid until an amount and due date had been specified by
the person owed.  By the Plaintiff's own admission, he never received
any such notification from Dr. Lojo or his office.  The Plaintiff also
knew that payment is typically made by check or money order, not by
cash.  Nevertheless, the Plaintiff claims that the envelope full of
cash was intended to pay Dr. Lojo for his services.

     After thoughtful consideration of the probable scenarios that may
have led the Plaintiff to believe that he was required to pay Dr. Lojo
immediately in cash, we find that the Plaintiff attempted to bribe
and, thus, inappropriately influence Dr. Lojo's assessment of his
medical condition.  Plaintiff did not personally owe Dr. Lojo or his
office anything, nor did the Doctor or his office ever indicate
otherwise.  Moreover, the Plaintiff did not articulate to either the
Doctor  or  his secretary that the envelope was intended to pay for
Dr. Lojo's services.   Rather, the Plaintiff surreptitiously and
without explanation tried to leave a cash-laden envelope for Dr. Lojo.

     We find that the Plaintiff's behavior corrupted the discovery
process and obstructed the administration of justice.  His conduct was
improper and reprehensible.  We cannot, and will not, tolerate it.
We, accordingly, dismiss the complaint against the Defendants and
assess attorneys' fees against the Plaintiff, payable to his attorney
and opposing counsel.  We do not take this action lightly.  Although
we subscribe to the policy favoring adjudication on the merits, the

Civil No. 98-2100 (JAF)                                                    6-

Plaintiff's actions have so affronted the integrity of the judicial process and this court that we are compelled to this extreme remedy. See Aoude v. Mobile Oil Corporation, 892 F.2d 1115, 1118 (1st Cir. 1989) (recognizing the inherent power to dismiss where a party "defiles the judicial system in committing a fraud on the court").

### III.

### Conclusion

Given the above findings, we hereby **DISMISS** this case with prejudice and **ORDER** the Plaintiff to pay the attorneys' fees as previously specified.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this                  day of September, 1999.

JOSE ANTONIO FUSTE
U. S. District Judge